UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ESSEX INSURANCE COMPANY,** } | |
| } | |
| Petitioner, } | |
| } | |
| v. } | Case No.:  2:14-cv-02132-RDP |
| } | |
| **J & J MASONRY LLC, et al.,** } | |
| } | |
| Respondents. } | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff's Motion For Default Judgment Against Defendant J & J Masonry LLC.  (Doc. # 13).  For the reasons discussed below, the Motion (Doc. # 13) is due to be granted.

### The Underlying Lawsuits

Arthur Bond and Marilyn Bond are Alabama citizens and residents. At all relevant times, the Bonds owned a house located in the "Arbor Hills" subdivision at 2372 Arbor Glenn, Hoover, Jefferson County, Alabama.  (Doc. # 1 ¶4).  Through the filing of a First Amended Complaint, on May 27, 2010, Arthur and Marilyn Bond joined twenty-five (25) other homeowners in the "Arbor Hills" subdivision in Hoover, Alabama in a class action lawsuit styled *Judith Sargent et al. vs. HPH Properties LLC et al.* pending in the Circuit Court of Shelby County, Alabama, Case No. 58-CV-2010-900261. (Doc. # 1 ¶12, Doc. # 1-6).  The *Sargent* First Amended Complaint identified at least sixteen (16) different houses in the "Arbor Hills" subdivision as having been constructed by HPH Properties LLC.  (Doc. # 1 ¶13, Doc. # 1-6 ¶¶4, 7, 11, 14, 16, 18, 21, 24, 26, 29, 32, 34, 37, 40, 43, 45, 46, 55, 65).  According to the *Sargent* First Amended Complaint, the

Bonds closed on the purchase of the house located at 2372 Arbor Glenn, Hoover, Alabama in July 2006. (Doc. # 1-6 ¶¶44-45). The Bonds allegedly noticed some "issues or problems" sometime after they moved into the house. (Doc. # 1-6 ¶57). The Bonds eventually hired an inspector who identified various construction problems including "improperly installed brick veneer; no proper through wall flashing observed, no proper weep holes; improper slope at rowlock at window sill; numerous voids at head and bed mortar joints at brick veneer; … severe efflorescence deposits at brick veneer and indication of long term moisture intrusion." (Doc. # 1-6 ¶¶62-63). The Bonds' claims against HPH Properties LLC were severed from the *Sargent* lawsuit and assigned a new case number 58-CV-2010-000955. (Doc. # 1 ¶13).

On June 19, 2014, HPH Properties LLC filed a third-party complaint against J & J Masonry LLC. (Doc. # 1 ¶14, Doc. # 1-7). In the third party-complaint, HPH Properties LLC essentially alleged J & J Masonry was responsible for the defects in the house arising from J & J Masonry's brick masonry work on the exterior of the house and the damages arising therefrom as alleged by the Bonds. (Doc. # 1 ¶14, Doc.1-7 ¶¶6, 9, 13, 17, 21-24, 26-31, 35, 37, 40, and 44).

**The Insurance Policies**

Essex insured J & J Masonry (under the name J & J Masonry Inc.) under five insurance policies issued and in effect between December 2009 and December 2014. (Doc. # 1 ¶¶7-11, Docs.1-1, 1-2, 1-3, 1-4, 1-5). Policy 3DC7370 had a policy period from 12/22/2009 to 12/22/2010. (Doc. # 1 ¶7 & Doc.1-1). Policy 3DE8489 had a policy period from 12/22/2010 to 12/22/2011. (Doc. # 1 ¶8, Doc. # 1-2). Policy 3DJ3073 had a policy period from 12/22/2011 to 12/22/2012. (Doc. # 1 ¶9, Doc. # 1- 3). Policy 3DM6396 had a policy period from 12/22/2012 to 12/22/2013. (Doc. # 1 ¶10, Doc. # 1-4). Policy 3DS2057 had a policy period from 12/22/2013 to 12/22/2014. (Doc. # 1 ¶11, Doc. # 1-5).

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM in all five Policies states in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

…

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of

3

Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

…

**SECTION V – DEFINITIONS**

…

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*See, e.g.*, Doc. # 1-1 p.4, 16-18).

Policy 3DC7370 (Doc. # 1-1) and Policy 3DE8489 (Doc. # 1-2) have a COMBINATION CONSTRUCTION RELATED ENDORSEMENT which states in relevant part as follows:

The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:

> (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;
>
> (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Doc. # 1-1 p.23, Doc. # 1-2 p.10).

Policy 3DJ3073 (Doc. # 1-3) has a COMBINATION CONSTRUCTION RELATED ENDORSEMENT which states in relevant part as follows:

> The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:
>
> (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;
>
> (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Doc. # 1-3 p.33).

Policy 3DM6396 (Doc. # 1-4) and Policy 3DS2507 (Doc. # 1-5) each has a PREEXISTING INJURY, LOSS OR DAMAGE EXCLUSION which states:

> The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" or any injury, loss or damage:
>
> (a) Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy;
>
> (b) Which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy;

(Doc. # 1-4 p.36, (Doc. # 1-5 p.39).

Policy 3DC7370 (Doc.1-1) and Policy 3DE8489 (Doc.1-2) each have a COMBINATION CONSTRUCTION RELATED ENDORSEMENT which states in relevant part as follows:

> The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of, caused or contributed by inadequate, improper, faulty or defective construction:
>
> …
>
> 3. arising out of any apartment, townhome, condominium, dwelling, or other residential facility project or development where the total project or development exceeds 10 homes and/or units, unless the insured was retained by the home and/or unit owner to perform contracting operations or services after it has been occupied for its intended purpose; or

(Doc. # 1-1 p.23, Doc. # 1-2 p.10).

### Entry of Default

Plaintiff Essex Insurance Company filed this declaratory judgment action against Defendant J & J Masonry LLC and others on November 3, 2014.  (Doc. # 1).  In its Complaint, Essex sought a declaratory judgment against J & J Masonry holding that Essex has no duty to defend or indemnify J & J Masonry in the underlying state court litigation under the five policies of insurance issued by Essex to J & J Masonry and in effect between December 2009 and December 2014.

Defendant J & J Masonry LLC was served with the Summons and Complaint by certified mail on November 12, 2014.  (Doc. # 5, Doc. # 11-1).  J & J Masonry LLC's answer or motion or other responsive pleading was due on December 10, 2014.  (Doc. # 5).  On January 9, 2015, the Clerk of the Court entered Default against J & J Masonry LLC due to its failure to appear and defend against this action.

**The Current Motion**

Plaintiff now seeks a Rule 55(b) default judgment against Defendant J & J Masonry LLC declaring that it has no duty to defend or indemnify J & J Masonry in the underlying state court litigation under the five policies of insurance issued by Essex to J & J Masonry and in effect between December 2009 and December 2014. (Doc. # 14).

Rule 55 (b) states in relevant part:

(b) [Default] Judgment. Judgment by default may be entered as follows:

(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein.  If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed.R.Civ.P. 55(b)(1),(2).

Although this court permits the Clerk of Court to enter default when appropriate pursuant to Rule 55(a), it is the practice of the judges of this court to reserve all decisions about the entry of a Rule 55(b) default judgment for the discretion of the particular judge to which the case is assigned, even though Rule 55(b)(1) permits the Clerk of Court to enter a default judgment when a plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation

be made certain. Accordingly, Plaintiff's motion for default judgment in this case is properly before the undersigned.

The court finds that entry of a default judgment in favor of Essex and against Defendant J & J Masonry is appropriate because all of the requirements of Rule 55(b) are satisfied in this case. Essex has submitted affidavit testimony evidencing that Defendant J & J Masonry was duly served with a copy of the Summons and Complaint, that more than eighty (80) days have elapsed since the date on which J & J Masonry was served, and that J & J Masonry has failed to answer or otherwise defend against to Plaintiff's Complaint, or serve a copy of any answer or other defense which it might have upon Plaintiff's counsel. (Doc. # 5, Doc. # 11-1).

Upon default, the well-pleaded allegations of a complaint are taken as true. *E.g., Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu Constr. Co. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

**Applicable Law**

Alabama courts apply a manifestation of damages rule for determining when an insurance policy's defense and coverage obligations are triggered. In *U.S. Fidelity & Guaranty Co. v. Warwick Development Co.*, 446 So. 2d 1021 (Ala. 1984), the Alabama Supreme Court adopted "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time the complaining party was actually damaged." As practical matter, this general rule means "the insurance that is in force at the time of the property damage … is applicable rather than insurance that was in force when the work was performed." *Id.*; *see also Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So. 2d 466 (Ala. 2002); *American States Ins. Co. v. Martin*, 662 So. 2d 245, 250 (Ala. 1995).

Accepting the Bonds' lawsuit allegations as true for purposes of this analysis, they first discovered the alleged "property damage" and experienced the alleged "bodily injury" after they moved into the home in July 2006 and during the two years before they joined the *Sargent* lawsuit on May 27, 2010. Accordingly, they have alleged damages which first began manifesting before the 12/22/2009 inception of Policy 3DC7370 and long before the 12/22/2010, 12/22/2011, 12/22/2012, and 12/22/2013 inception dates of the four other policies. (Doc. # 1).

Each of the policies has exclusions for bodily injury and property damage "[w]hich first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring to any degree, as of the inception date of this policy." Exclusions also apply for such claims when the injury or damage "is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy."

Moreover, the earlier policies which became effective in December 2009 and December 2010, Policy 3DC7370 and Policy 3DE8489, exclude coverage where the alleged "property damage" and "bodily injury" arose out of allegedly inadequate, improper, faulty or defective construction in a residential facility project or development – such as the Arbor Hills subdivision – where the total project or development exceeded 10 homes.

## Conclusion

The Complaint does not seek money damages, but rather seeks only a declaratory judgment. Because damages are not sought, an evidentiary hearing is unnecessary and the court may adjudicate the matter of default "upon request of the plaintiff and upon affidavit of the amount due." Fed.R.Civ.P. 55(b)(1); *see, e.g., United States Artist Corporation v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

For the reasons outlined above, Essex's Motion for Default Judgment is due to be granted, and Essex is entitled to default judgment against J & J Masonry on its Complaint for declaratory judgment that it has no duty to defend and indemnify J & J Masonry in the underlying lawsuit.

A separate order will be entered.

**DONE** and **ORDERED** this February 2, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE